1
2
3
4
5
6

THE HONORABLE ROBERT S. LASNIK

7

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

8
9
10

MICHAEL D. CASTRO, an individual,

Plaintiff,

11

v.

12

TRI MARINE FISH COMPANY, LLC, an
unknown entity; TRI MARINE
MANAGEMENT COMPANY, LLC, an
unknown entity; TRI MARINE FISHING
MANAGEMENT, LLC, an unknown entity;
CAPE MENDOCINO FISHING, LP, an
unknown entity; CAPE MENDOCINO
FISHING, LLC, an unknown entity; and
DOES 1 through 20, inclusive,

Defendants.

13
14
15
16
17
18

Case No. 2:17-cv-00008-RSL

DEFENDANTS' MOTION TO STRIKE,
OPPOSITION TO MOTION TO
REMAND, MOTION TO ENFORCE
FOREIGN ARBITRAL AWARD AND,
IN THE ALTERNATIVE, MOTION TO
ENFORCE FOREIGN ARBITRATION
CLAUSES

**NOTED FOR HEARING:
MARCH 17, 2017**

19
20
21
22
23
24
25
26

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL
PDX\124474\218360\DBO\20118519.1

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ..................................................................................... 2

    A.    The Arbitration Agreements and the Arbitral Award ........................ 2

    B.    Mr. Castro's Declaration ................................................................ 11

    C.    Applicability of the Convention ..................................................... 12

    D.    Plaintiff's Counsel's Failure to Comply with Fundamental Procedural Rules ............................................................................. 13

MOTION TO STRIKE ........................................................................................ 13

    A.    Plaintiff's Improperly Filed Notice of Appearance and Plaintiff's Improperly Filed Motion to Remand Must Be Struck In Their Entirety ....... 13

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND ................................. 14

    A.    Removal Was Proper on Its Face and Remand Must Be Denied ................... 14

    B.    Each and Every One of Plaintiff's Arguments were Recently Rejected by the Central District of California .............................................. 16

MOTION TO ENFORCE PHILIPPINE ARBITRATION AWARD ..................... 18

    A.    The Foreign Arbitral Award Must Be Enforced and Plaintiff's Claims Must Be Dismissed Outright ............................................... 18

    B.    "Unhappy With the Result" is Not Grounds for Refusal or Deferral of Recognition or Enforcement of the Arbitral Award ..................... 20

MOTION, IN THE ALTERNATIVE, TO ENFORCE FOREIGN ARBITRATION AGREEMENTS ................................................................. 25

    A.    The Three Overlapping Foreign Arbitration Agreements Should Be Enforced( if this Court is not Inclined to Enforce Plaintiff's Settlement and Arbitral Award) .................................................... 25

CONCLUSION .................................................................................................... 26

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - i
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*,
   783 F.3d 1010 (5th Cir. 2015).................................................................. 22, 23, 24

*Balen v. Holland Am. Line Inc.*,
   583 F.3d 647 (9th Cir. 2009)........................................................................ 14, 15

*Bautista v. Star Cruises*,
   396 F.3d 1289 (11th Cir. 2005)..................................................................... 15, 26

*Beiser v. Weyler*,
   284 F.3d 665 (5th Cir. 2002) ............................................................................. 14

*Costa v. Celebrity Cruises, Inc.*,
   768 F.Supp.2d 1237 (S.D. Fla. 2011) ............................................................... 18

*Erbacci, Cerone & Moriarty v. United States*,
   923 F. Supp. 482 (S.D.N.Y. April 10, 1996) ................................................ 13, 14

*Francisco v. Stolt Achievement MT*,
   293 F.3d 270 ...................................................................................................... 14

*Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*,
   631 F.3d 1133 (9th Cir. 2011)..................................................................... 14, 17

*Lindo v. NCL Bahamas, Ltd.*,
   652 F.3d 1257 (11th Cir. 2011).......................................................................... 18

*Lipcon v. Underwriters at Lloyd's of London*,
   148 F.3d 1285 (11th Cir. 1998)......................................................................... 25

*Miller v. Tri Marine*,
   2016 U.S. Dist. LEXIS 83936, 2016 WL 3545523 (C.D.Ca., June 28, 2016) 16, 17, 24, 25

*Ministry of Defense of the Islamic Republic or Iran v. Gould, Inc.*,
   969 F.2d 764 (9th Cir. 1992).......................................................................... 18, 19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
   472 U.S. 614 (1985) ........................................................................................... 25

*Navarette v. Silversea Cruises, Ltd.*,
   169 F.Supp.3d 1314 (S.D. Fla. 2015) .......................................................... 20, 21, 23, 24

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - ii
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

*Rogers v. Royal Caribbean Cruise Line*,
  2007 U.S. Dist. LEXIS 89088 (C.D.Ca. 2007) ................................................................. 14

*Standard Bent Glass Corp. v. Glassrobots Oy*,
  333 F.3d 440 (3d Cir. 2003) ............................................................................................. 14

*Thomas v. Carnival Corp.*,
  573 F.3d 1113 (11th Cir. 2009) ........................................................................................ 18

*Vimar Seguros y Reaseguros v. M/V Sky Reefer*,
  515 U.S. 528 (1995) ......................................................................................................... 25

STATUTES

*9 U.S.C. §§ 201 et seq.* ............................................................................................... 14, 18

9 U.S.C. § 203 ................................................................................................................... 14

9 U.S.C. § 205 ........................................................................................................ 12, 14, 17

9 U.S.C. § 206 ................................................................................................................... 18

OTHER AUTHORITIES

L. R. 83.1(d) ...................................................................................................................... 13

Lawrence S. Schaner & John R. Schleppenbach, Enforcement of Foreign Arbitral
  Awards and Court Judgments in the United States (Jenner and Block, 2010) ................. 18

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - iii
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1  Defendants Tri Marine Fish Company, LLC; Tri Marine Management Company,

2  LLC; Tri Marine Fishing Management, LLC; Cape Mendocino Fishing, LP, and Cape

3  Mendocino Fishing, LLC (collectively "Defendants") hereby file this Motion to Strike,

4  Opposition to Motion to Remand, Motion to Enforce Foreign Arbitral Award and, in the

5  alternative, Motion to Enforce Foreign Arbitration Clauses.

6  ## INTRODUCTION

7  Plaintiff's arguments in support of his Motion to Remand are not novel or new –

8  Plaintiff's counsel already advanced the exact same arguments (on virtually identical facts)

9  in the United States District Court for the Central District of California only seven months

10  ago, without success.  Judge John Kronstadt's well-reasoned chambers' opinion provides a

11  roadmap for this Court, one that forcefully articulates why plaintiff's motion to remand

12  should be denied.

13  While Plaintiff's arguments are not novel, the story presented by Mr. Castro's self-

14  serving declaration certainly is.  But Mr. Castro's story can't supersede his signed

15  employment contract, a signed advance receipt, three separate signed arbitration clauses,

16  settlement and release papers bearing his signature (and the signatures of numerous

17  witnesses), and an Order from an accredited maritime arbitrator reducing Mr. Castro's

18  settlement to an arbitral award.  Mr. Castro presents an in-credible story of fraud, deceit and

19  deception implicating lawyers, claims executives, HR personnel and accredited arbitrators

20  spread across the Pacific, *every one of whom* refute Mr. Castro's narrative.

21  Plaintiff's counsel likewise omits and contradicts evidence, ignoring an Advance

22  Receipt signed by Mr. Castro acknowledging: (1) receipt of a $5,000 advance that became

23  part of his settlement (making the actual settlement amount, at the least, $21,160, *not* the

24  $16,100 plaintiff's motion repeatedly cites to this Court and criticizes); and, (2) the existence

25  of the 12 July 2013 Employment Contract (six weeks before that Mr. Castro alleges he first

26

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 1
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

saw it).  Defendants' counsel had provided the Advance Receipt to plaintiff's counsel in mid-November of last year.

Plaintiff's counsel also ignores this Court's most basic rules -- counsel was not admitted to practice before this Court when they entered a notice of appearance, nor was counsel admitted to practice before this Court when they filed the pending motion to remand.

Against that backdrop, Defendants present the following: (1) brief in opposition to plaintiff's procedurally defective and factually dubious motion; (2) motions to strike, in their entirety, the Notice of Appearance of William Banning and the Motion to Remand before this Court; (3) a Motion to summarily approve the foreign arbitral award and settlement/release that extinguished Mr. Castro's claims nearly three years ago; and, (4) a motion, in the alternative, for an Order compelling arbitration pursuant to any of the three overlapping foreign arbitration clauses Mr. Castro executed with Defendants.

## STATEMENT OF FACTS

**A.      The Arbitration Agreements and the Arbitral Award**

1.      Filed herewith and incorporated fully herein are the following declarations in support of Defendants' opposition and several motions:

a.      The Declaration of David R. Boyajian ("Boyajian Dec."), filed herewith as Exhibit A, and the Exhibits attached thereto.

b.      The Declaration of Eufemia Bowles (née Drandic) ("Bowles Dec."), filed herewith as Exhibit B.

c.      The two Declarations of Rhodylyn De Torres ("De Torres Dec."), filed herewith as Exhibits C and D.

d.      The Declaration of Razelle Espana ("Espana Dec."), filed herewith as Exhibit E.

e.      The Declaration of Gregorio Biares ("Biares Dec.), filed herewith as Exhibit F.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 2
PDX\124474\218360\DBO\20118519.1

f.      The two Declarations of Herbert Tria ("Tria Dec.), filed herewith as Exhibits G and H.

2.      On 12 July 2013, plaintiff Michael Castro went to Tri Marine's offices in American Samoa to see Ms. Eufemia "Efi" Drandic (now, Eufemia Bowles) about employment aboard one of Defendants' fishing vessels.  Ex. B, ¶ 2.

3.      Ms. Drandic presented Mr. Castro with a "Contract for Employment as Crew Member" for his review.  After giving Mr. Castro adequate time to review, Ms. Drandic asked Mr. Castro whether he had read and understood it.  Mr. Castro indicated that he had read and understood the Employment Contract.  Ex. B, ¶ 3.

4.      Mr. Castro signed the Employment Contract on 12 July 2013 in Ms. Drandic's presence.  Ex. B, ¶ 4.

5.      Mr. Castro also initialed underneath Paragraph 8 (and under another limitations clause).  Paragraph 8 of the Tri Marine Agreement requires submission of employment-related disputes, including personal injury claims, to foreign arbitration. Paragraph 8 provides:

> Arbitration/Choice of Law. It is specifically agreed that any and all disputes or claims of any nature arising out of, or relating to, this employment agreement or the employee's employment aboard this Vessel shall be subject to mandatory binding arbitration. Any such arbitration shall occur in, and be subject to the procedural rules of, American Samoa. It is intended that this arbitration clause be construed broadly to incorporate any and all claims that can conceivably be arbitrated, including claims for death, personal injury, wages, discrimination, or harassment.

Ex. B, ¶ 4.

6.      Ms. Drandic then signed the Employment Contract as "Owners Representative" after checking a box acknowledging the following:

> "I, EUFEMIA DRANDIC, have inquired of the crewmember whether he could read this contract.  He advised me that he could read it and in my presence did read it.  He further advised me that he understood it."

Ex. B, ¶ 5.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 3
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

7.      On or about the following day, Mr. Castro went to work aboard Defendants' fishing vessel, the F/V CAPTAIN VINCENT GANN.  Ex. B, ¶ 6.

8.      Plaintiff alleges he sustained an injury on 30 July 2013, while working aboard the F/V CAPTAIN VINCENT GANN.  See, Plaintiff's Complaint.

9.      On 16 August 2013, Ms. Rhodylyn Del Torres, a senior Claims Executive at Del Rosario Pandiphil, Inc. ("Pandiphil") received instructions from Defendants to assist Mr. Castro, who had been repatriated to the Philippines.  Ex. C, ¶ 4.

10.      Mr. Castro had been repatriated to the Philippines because Mr. Castro is a Philippine citizen. See, e.g., Plaintiff's complaint.

11.      During the course of Mr. Castro's treatment (from 16 August 2013 to 24 February 2014, he visited Pandiphil's Makati City, Philippines office to collect his maintenance payments 13 times.[1]  Ex. C, ¶ 6.

12.      On 7 October 2013, Mr. Castro emailed Ms. Drandic asking about a $3,000 advance.  That request was approved (on 8 October and 10 October 2013) and a first advance, for $3,000, was transferred into Mr. Castro's bank account on 11 October 2013.  Exhibit 4 to the Boyajian Dec.

13.      On his 6th visit (2 December 2013), Mr. Castro asked Pandiphil about the potential for a complete settlement of his disability benefits, noting that his father then was suffering from cancer.  In response, Pandiphil relayed that request to Defendants and sought the opinion of one Dr. Alegre as to Mr. Castro's alleged disability.  Ex. C, ¶¶ 7, 8.

---

[1] Mr. Castro personally collected checks from Pandiphil's office on 2 September 2013, 16 September 2013, 30 September 2013, 14 October 2013, 30 October 2013, 15 November 2013, 2 December 2013, 16 December 2013, 2 January 2014, 15 January 2014, 30 January 2014, 14 February 2014, and 28 February 2014.  Until Mr. Castro's final settlement on 28 February 2014, none of those visits required a trip to an arbitrator's office or careful review and signature of various release documents in the presence of witnesses and arbitrators.  Ex. C, ¶ 6.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 4
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

14.     Dr. Alegre assigned Mr. Castro's injury a disability grading of Grade 10 pursuant the Schedule of Disability provided under Section 32 of the POEA SEC.  Ex. C, ¶ 8.

15.     On his subsequent visit (2 January 2014), Mr. Castro again inquired about settling his potential claim.  Ex. C, ¶ 9.

16.     Between 4 January and 7 January 2013, Mr. Castro communicated extensively via email, *in English*, with Tri Marine's Eufemia Drandic asking for a second advance, this time for $5,000.  Ms. Drandic took Mr. Castro to have a high proficiency with written English from this exchange (and all of their other interactions).  Ex. B, ¶¶ 7-10.

17.     On or about 7 January (or 9 January), 2014, Defendants offered Mr. Castro a $5,000 advance payment against any final settlement amount.  Ex. C, ¶ 10.

18.     On 15 January 2014, Mr. Castro went to Pandiphil's office to collect his $5,000 advance.  Mr. Castro signed an "Advance Payment Receipt No. 1," which contained the following (a *second* acknowledgement/foreign arbitration clause enforceable under the Convention):

> IT IS FURTHER UNDERSTOOD that in consideration of the receipt of this advance payment, the undersigned agrees to be bound by the Venue and Arbitration/Choice of Law clauses contained in the Contract for Employment as Crew Member signed on or about 12 July 2013, the terms of which are incorporated by reference herein.

Mr. Castro's girlfriend, Ms. April Ann Castillo, accompanied him on this visit and signed the Advance Payment Receipt as a witness.  Ex. C, ¶ 11, Ex. 2 to the Boyajian Dec.

19.     Mr. Castro's Declaration (and Plaintiff's Motion) nonetheless entirely ignores this advance and the signed receipt (despite the fact that counsel for Defendants provided Plaintiff's counsel with copies of same in mid-November 2016).  Exhibit 2 to the Boyajian Dec.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND, MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 5
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

20.     More troubling, Plaintiff's Motion is supported by Mr. Castro's sworn declaration alleging that he never saw a "Contract for Employment as Crew Member" until a purportedly fraudulent and backdated copy was presented to him some six weeks **after** he signed this Advance Receipt.

21.     In addition, plaintiff's memorandum in support of this motion states the following (citing the Castro Dec., ¶¶ 8, 9, emphasis added):

> "[I]n December of 2013, [Mr. Castro] telephoned Ms. Drandic at Tri Marine in American Samoa to request an advance… **Ms. Del Torres told him that he could not be given an advance** but could instead be given a lump sum payment.  She offered Plaintiff $16,160."

This assertion directly contradicts: (1) the $3,000 advance Mr. Castro had already received on 11 October 2013; and, (2) the signed Advance Receipt that counsel provided to plaintiff in mid-November 2016 evidencing Mr. Castro's second advance of $5,000 (not to mention the Bowles and Del Torres Declarations).  Ex. D, ¶ 7.

22.     On 8 February 2014, Defendants notified Pandiphil that Mr. Castro was prepared for a final settlement of his claims.  Ex. C, ¶ 12.

23.     On 14 February 2014, Mr. Castro reported to Pandiphil's office to discuss his final settlement.  Pandiphil offered Mr. Castro $15,000 pursuant to Defendants' instructions.  During the meeting, Mr. Castro requested that the costs of his further physical therapy be covered as well.  Ex. C, ¶ 13.

24.     On 18 February 2014, Pandiphil informed Mr. Castro that further physical therapy was estimated to cost around $1,160.00 as relayed by Dr. Alegre. Mr. Castro reiterated his prior request that this amount be covered by Defendants and included in the settlement (in addition to the $15,000 previously offered, the $3,000 11 October 2013 advance **and** the $5,000 15 January 2014 advance).  Ex. C, ¶¶ 14, 15.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND, MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC. Case No. 2:17-CV-00008-RSL - 6
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

25.     Mr. Castro's disability grading of Grade 10 pursuant the Schedule of Disability Allowance provided under Section 32 of the POEA SEC entitled Mr. Castro to disability benefits totaling $10,075, no more and no less.  Ex. G, ¶ 20.

26.     On 28 February 2014, Mr. Castro's disability claim was settled in the total amount of $24,160 (more than twice the amount to which Mr. Castro was entitled under the POEA SEC) with the corresponding signing of the release documents.[2]  Exhibits 2, 3 & 4 to the Boyajian Dec. and Ex. G, ¶ 20.

27.     During the execution of the release documents, Pandiphil's Ms. Del Torres explained to Mr. Castro the contents thereof and he signified his full understanding of the documents he was about to sign.  Ex. D, ¶¶ 7-9.

28.     Pandiphil's Claims Executive Ms. Razelle Espana also attended and witnessed Mr. Castro's settlement on 28 February 2014.  Pursuant to the standard procedure followed by Pandiphil in the settlement of claims, all the documents to be signed were given to Mr. Castro in order for him (and his girlfriend) to read and review.  Ms. Espana attests to the following:

> "Prior to Mr. Castro's act of affixing his signature on the release documents, Rhodylyn De Torres, in accordance with the standard procedure, explained thoroughly to Mr. Castro the contents of the documents which he will sign on that day, 28 February 2014. In explaining the contents of the documents, Rhodylyn De Torres went as far as translating the contents of the documents in Filipino (Tagalog) language. It is a standard procedure in our office that in order to ensure that release documents to be signed by claimants are well-understood before signing the same, the contents of the documents are always translated in Filipino (Tagalog) language. While it is true that based on Rhodylyn's conversation with Michael Castro that the latter can speak and understand the English language, still, the release documents were translated and explained to Michael Castro both in Filipino (Tagalog) language. * * *

---

[2] This $24,160 settlement was paid *in addition to* the ongoing lost maintenance payments, the payment of Mr. Castro's medical bills, and Mr. Castro's lost wages, which Defendants had paid throughout.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND, MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 7
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

> After explaining to him the contents of the documents, Mr. Castro was provided the opportunity to ask questions about the release documents. Thereafter, Mr. Castro freely and voluntarily signed the release documents. The settlement proceedings for which I was present was held in our office.
> * * *
> After signing the documents in our office, it was also explained by Ms. De Torres to Mr. Castro that he will proceed to the Office of the National Conciliation and Mediation Board wherein the documents that he signed will be submitted to a voluntary arbitrator for approval."

Ex. E, ¶¶ 8-11.

29.     Mr. Castro, Ms. Castillo, Ms. Espana and Ms. Caren Yabut (who is no longer with Pandiphil, and was unavailable as an additional declarant) took the release documents to the office of Gregorio Biares, Jr., a Voluntary Maritime Arbitrator accredited by the National Conciliation and Mediation Board of the Republic of the Philippines in Manila, where they jointly submitted a Joint Motion to Dismiss, a Receipt of Payment, a Receipt of Full Release, and a document entitled "RIGHTS OF SEAMEN."  Ex D., ¶ 9; Ex. E, ¶ 8; Ex. 3 to the Boyajian Dec.

30.     Compromise agreements of this type are routinely submitted to Voluntary Maritime Arbitrators in the Philippines, to approve them as to form, to be sure they meet applicable public policy standards, and to give them the effect of final binding decisions. *See*, Ex H, ¶¶ 10-13, et. seq.

31.     In the performance of Mr. Biares' sworn duties as a voluntary arbitrator, Mr. Biares is "bound to do among other things the following: (a) conciliate and mediate employment-related disputes between seafarers and vessel interests; (b) hear and decide cases filed by the seafarers against their employers and vice-versa; (c) ***encourage the parties to reach a compromise and approve quitclaim, compromise agreement, release document or other similar papers***."  Ex. F, ¶ 3.

32.     Mr. Castro "manifested that he and [Defendants] voluntarily entered into a Compromise Agreement" and Mr. Biares "explained to the above-named parties the legal

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 8
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

implications of entering into a compromise agreement in the Filipino language for which they are familiar." Ex. F, ¶ 4.

33.    Mr. Biares recalls the following:

> "I fully explained to Mr. Castro that the execution of the release documents and acceptance of the afore-said amount would serve as a bar against any and all future claims and cases against herein defendants. Likewise, I have explained to Mr. Castro the contents of the document entitled "Rights of Seamen" as well as its implication in affixing his signature on the said document. Further, I have taken the initiative of asking Mr. Castro in Filipino (Tagalog) language if he has understood the contents and implications of all the documents he signed for which he replied in the affirmative."

Ex. F, ¶ 5.

34.    "With the affirmation of Mr. Castro that he understood the contents and implications of all the documents he signed," Mr. Biares "approved and affixed my signature on the lower bottom portion of page 5 of the documents signed by Mr. Castro.  As a consequence of my approval of the duly-signed release document, I issued an Order finding the compromise agreement reached by the parties and the signed documents to be not contrary to law, morals, good customs and public policy."  Ex. F, ¶ 5.

35.    In the RECEIPT AND FULL RELEASE Mr. Castro signed, he initialed a box indicating that he was aware that the extent of his injuries "may not be fully known" and "may require additional treatment" . . . "possibly for the duration of my life," and that "despite this knowledge and understanding, I want to enter into final settlement of my claim."  Ex. 3 to the Boyajian Dec.

36.    The RECEIPT AND FULL RELEASE Mr. Castro signed also contains a *third* foreign arbitration clause stating "I agree that any issues with respect to the validity or enforceability of the Release will be resolved by arbitration in American Samoa."  Ex. 3 to the Boyajian Dec.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND, MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 9
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

37.     Mr. Castro affirmed, in his own hand, that he "read these papers," that "these papers [have] been read to [him]," that the papers he was signing were "A RELEASE" (written in caps in his own hand), that he was releasing every future claim he might have, and that the released parties would not pay for any future medical treatments.  Ex. 3 to the Boyajian Dec.

38.     The "Certificate of Witness" attached to the settlement papers was signed by Mr. Castro's girlfriend Ms. April Ann Castillo, and by Pandiphil's Carren Yabut and Razelle Espana.  Ex. 3 to the Boyajian Dec.

39.     Mr. Castro also signed a "RIGHTS OF SEAMEN" document which describes in detail each of the remedies potentially available to him under United States maritime law and acknowledges "[t]here is no limit to the amount that a seaman can recover under any of these rights."  Mr. Castro acknowledged that he "read the above article entitled "Rights of Seamen" and have understood same" and that he "read this before signing any release."  Ex. 3 to the Boyajian Dec.

40.     Pandiphil's Ms. De Torres signed the notarized Certificate of Interpreter which states:

> "I hereby certify that I am fluent in English and Filipino language and correctly and accurately translated the Receipt and Release from English into the native tongue of Michael D. Castro, Filipino language, and Michael Castro acknowledged that he fully understood its contents and meaning of the Receipt and Release."

Ex. 3 to the Boyajian Dec.

41.     Ms. De Torres further attests that "[t]he compromise settlement entered by Michael D. Castro was a product of various meetings with [Mr. Castro] and that [Mr. Castro] understood and consented to the release documents he executed and signed."  Ex. D, ¶ 10.

42.     Both Mr. Biares and Ms. Espana unequivocally state that the contents and consequences of the settlement were explained in both English and Tagalog.  Ex. E, ¶ 9.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 10
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

43.     Pandiphil's Ms. Razelle Espana attests that "Mr. Castro understood and consented to the release documents he executed and signed." Ex. E, ¶ 12.

44.     Arbitrator Gregorio Biares, Jr. states, in his sworn declaration, "I would like to reiterate that <u>the compromise settlement entered by Michael Castro was voluntarily and fairly agreed upon and would serve as a bar against any and future claims of Mr. Castro against herein defendants before any courts of law, whether in the Philippines or in other foreign jurisdictions</u>." Ex. F, ¶ 6 (emphasis added).

## B.     Mr. Castro's Declaration

On the other hand, and as alluded to above, Plaintiff's Motion is supported **only** by the Declaration of Michael D. Castro.  The declaration is notable for the sheer number of assertions directly contradicted by Defendants' documentary evidence and the several declarations submitted herewith.  Among those contradictions are the following critical examples:

1.     In paragraph 4, Mr. Castro asserts that he did not execute a pre-employment contract.  This statement contradicts the documentary evidence (both his Employment contract **and** the Advance Receipt he signed when he received $5,000 from Defendants) and Ms. Drandic's declaration, as detailed above.

2.     In paragraph 9, Mr. Castro states that Ms. De Torres told Mr. Castro, "towards the end of 2013," that he "could not be given an advance."  However, as noted above, Mr. Castro made a request for an advance via email correspondence, **in English**, on two separate occasions, both of which were paid: (1) Mr. Castro asked Ms. Drandic for a $3,000 advance on 7 October 2013 which was paid on 11 October 2013; and (2) Mr. Castro asked Ms. De Torres for a $5,000 advance between 4 and 7 January 2014.  Ms. De Torres made the necessary arrangements for this second advance and presented a check for $5,000 to Mr. Castro on 15 January 2014, the receipt of which he acknowledged in writing.  That receipt also acknowledged: (1) the 12 July 2013 Employment Contract; and (2) Mr. Castro's

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

agreement to foreign arbitration for any claim he might bring.  These facts are detailed above.  Plaintiff's motion ignores both of these advances entirely.

**C.      Applicability of the Convention**

Ms. Garrett's declaration filed in support of the pending motion to remand accurately describes how the case got here:  Plaintiff filed in California state court and Defendants removed.  The parties then agreed to dismiss the California action and proceed in Washington State; Plaintiff filed in King County and Defendants, again, removed. Defendants' Notice of Removal provides greater detail, but the operative facts forming the basis for Removal under the Convention are summarized as follows:

1.      On 4 January 2017, Defendants removed pursuant to 9 U.S.C. § 205 and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 10 June 1958 ("the Convention") based upon the following:

    a.      Plaintiff was a citizen of The Republic of the Philippines working out of the U.S. Territory of American Samoa at the time of his alleged injury.

    b.      Defendants are corporate citizens of the United States.

    c.      On 12 July 2013, Plaintiff executed an Employment Contract, prior to doing any of the vessel's work, which contained a foreign arbitration clause.

    d.      Plaintiff's Employment Contract contemplated performance primarily or entirely outside the United States.

    e.      On 28 February 2014, Plaintiff and Tri Marine submitted a Joint Motion to Dismiss, Receipt of Payment, and Receipt of Full Release to Mr. Gregorio Biares, a Voluntary Maritime Arbitrator accredited by the National Conciliation and Mediation Board of the Republic of the Philippines in Manila.  Mr. Biares issued an Order and award approving the terms of compromise agreement (the settlement/release) and reducing same to a foreign arbitral award releasing Plaintiff's claims against Defendants.

    f.      The Republic of the Philippines is a signatory to the Convention; therefore the Arbitral Award was issued in a signatory nation.  The United States, and thus American Samoa, is also a signatory to the Convention.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 12
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

**D.      Plaintiff's Counsel's Failure to Comply with Fundamental Procedural Rules**

In response to Defendants' removal, Plaintiff's counsel made the following improper filings:

1.      On 30 January 2017, Mr. Banning, a California attorney who is *not* licensed in Washington, indicated that he is "admitted or otherwise authorized to practice in this court" when he filed a Notice of Appearance (Dkt. 10).

2.      On 3 February 2017, Mr. Banning filed a Notice of Motion and the pending Motion to Remand, as well as supporting declarations (Dkts. 11–11-9).

3.      On 24 February, Plaintiff's counsel filed a praecipe in which counsel characterized this as a clerical oversight, stating that the motion should have borne Mr. Merriam's name, as local counsel.  However, as Mr. Merriam has not appeared in this case, that wouldn't have cleared up the defect either.

While Mr. Banning and his colleague Ms. Rebecca Rojas ***eventually*** applied for and were granted *pro hac* admission for this matter, that didn't happen until 22 February 2017 – three weeks ***after*** they filed the present motion.  At the time of filing, no one in Plaintiff's counsel's office was admitted before this Court or for this matter.

## MOTION TO STRIKE

**A.      Plaintiff's Improperly Filed Notice of Appearance and Plaintiff's Improperly Filed Motion to Remand Must Be Struck In Their Entirety**

The Local Rules for the Western District of Washington provide that an attorney who is not generally admitted before this Court may only participate in a case before this Court if she is admitted *pro hac vice* and associates local counsel.  W.D. Wash. L. R. 83.1(d).  Because "[i]t is axiomatic that unless and until that motion is granted, [an attorney] may not practice before this court" and any motion filed by an attorney not admitted "is not properly before th[e] Court."  *Erbacci, Cerone & Moriarty v. United States*, 923 F. Supp. 482, 486, 485 (S.D.N.Y. April 10, 1996).

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND, MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC. Case No. 2:17-CV-00008-RSL - 13
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

In *Erbacci,* the Court denied a motion where the motion and *pro hac vice* application were simultaneously filed, holding that the attorney violated the local rules by bringing a motion despite the fact that he was not admitted to practice before that court.  *Erbacci*, 923 F. Supp. at 485.  The Court further noted that the attorney likely violated New York State's prohibition against the unauthorized practice of law.  *Id.*

These arguments are more fully laid out in Defendants' separately-filed Motion to Strike.  In any event, the Notice of Appearance and Motion for Remand (Dkt. Nos. 10 through 11-9) are not properly before the Court and must be struck.

### OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**A.      Removal Was Proper on Its Face and Remand Must Be Denied**

The 28 February 2014 Order and arbitral award issued by accredited Voluntary Maritime Arbitrator Gregorio Biares in Manila, Republic of the Philippines, is an international arbitration award covered by the Convention.  *See 9 U.S.C. §§ 201 et seq.*  As this matter implicates and is controlled by an Arbitral Award falling under the Convention, the District Courts have original jurisdiction over this action.  *See* 9 U.S.C. § 203. *See also, e.g., Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137-1139 (9th Cir. 2011) (removal is mandatory under 9 U.S.C. § 205 "where a defendant raises a defense related to an arbitral award falling under the Convention."); *Beiser v. Weyler, 284 F.3d 665, 674 (5th Cir. 2002)* ("[E]asy removal is exactly what Congress intended in § 205.")

This case also involves ***three*** overlapping foreign arbitration clauses, each of which implicate the Convention and, therefore, vest jurisdiction with this Court.  *See 9 U.S.C. §§ 201 et seq. See also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003) (setting forth four factors to determine whether the arbitration agreement falls under the Convention); *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654 (9th Cir. 2009) (adopting the four factors set forth in *Standard Bent Glass*); *Rogers v. Royal Caribbean Cruise Line*, 2007 U.S. Dist. LEXIS 89088 (C.D.Ca. 2007); *Francisco v. Stolt Achievement*

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 14
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

*MT*, 293 F.3d 270; 2002 U.S. App. LEXIS 10683; 2002 AMC 1529 (5th Cir. 2002); *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005).

The four factors allowing removal to enforce a contractual arbitration provision under the Convention (articulated in the above-cited cases and adopted in the Ninth Circuit in *Balen*) are:

1.  <u>A valid agreement in writing to arbitrate – or a foreign arbitral award – exists</u> (the Tri Marine employment agreement is in writing, as are the affirmation in the Advance Receipt and Mr. Biares' arbitral Order);

2.  <u>The arbitration would take place – or took place – in the territory of a signatory to the convention</u> (the Tri Marine arbitration clauses mandate venue in American Samoa and Mr. Biares' arbitral Order was issued in the Philippines, both signatory countries);

3.  <u>The agreement arises out of a commercial relationship</u> (courts have repeatedly determined that seaman's employment is the type of commercial transaction contemplated by the Convention); and,

4.  <u>A party to the agreement is not an American citizen</u> (Mr. Castro is a citizen of the Republic of the Philippines).

*See*, *e.g.*, *Balen*, 583 F.3d at 654.  Under any of the documents bearing Mr. Castro's signature, the jurisdictional analysis leads to the same result: remand is not an appropriate or available remedy.[3]

/ / /

/ / /

---

[3] These arguments are laid out on the face of Defendants' Notice of Removal, which Defendants incorporate fully herein, by reference.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND, MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 15
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

**B.      Each and Every One of Plaintiff's Arguments were Recently Rejected by the Central District of California**

Plaintiff's counsel nonetheless rehashes a litany of arguments that were rejected by the Central District of California a mere seven months ago, on facts nearly indistinguishable from those before this Court.[4]  As in *Miller v. Tri Marine*, 2016 U.S. Dist. LEXIS 83936, 2016 WL 3545523 (C.D.Ca., June 28, 2016), Plaintiff's theme can be summarized as follows: "in ruling on a motion to remand, a district court must determine that there is no triable issue of fact as to the existence of a valid and enforceable agreement."  *Miller*, at *10.  Miller's widow "contend[ed] that standard has not been met here for several reasons" *Miller*, at *10.

The particular "reasons" advanced in *Miller* were these:

1.      "The Tri Marine agreement was in English, but [Plaintiff] spoke Tagalog and could neither read nor write English with sufficient proficiency to understand it;"

2.      "The Tri Marine agreement was entered after [Plaintiff] commenced work preparing the vessel;"

3.      The "three different arbitration clauses and two venue clauses . . . create[ ] uncertainty and ambiguity as to which clause controls;" and, finally,

4.      The Plaintiff "is a ward of admiralty and must be given legal protection better than any other class of workers thus any ambiguity in his employment contract must be construed against the shipowner."

---

[4] In *Miller*, the Banning Firm's client had died from his injuries.  His widow advanced the same statutory and common law claims asserted here, with an additional claim under the Death on the High Seas Act.  Only the foreign arbitration clause(s) contained in Mr. Miller's employment contracts were before the court, as no foreign arbitral award had yet issued.

Perhaps counsel was shopping for a different result when they agreed to dismiss and refile in King County, as required by the venue provision in Mr. Castro's Employment Agreement. *See*, Ex. 1 to the Boyajian Dec, at ¶ 1.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 16
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1   Miller at *10-*12.  Mr. Castro advances each of these same arguments here.

2        Given the striking similarities, Judge Kronstadt might as well have been ruling on

3   Mr. Castro's current motion.  First, Judge Kronstadt rejected the proposed jurisdiction

4   standard – plaintiff's arguments, he said, "apply to the enforceability of the agreements, not

5   their presence.  The latter is a sufficient basis to establish initial jurisdiction under [the

6   Convention]."  *Id*. at *13.  "Plaintiff's suggested approach to determining a court's

7   jurisdiction under [the Convention,]" Judge Kronstadt continued, "has the disadvantage of

8   frontloading a merits inquiry into the district court's examination of its jurisdiction."  *Id*. at

9   *16, citing *Beiser v. Weyler*, 284 F.3d 665, 670(5th Cir. 2002) ("[E]asy removal is exactly

10  what Congress intended in § 205").  The Ninth Circuit adopted *Beiser*'s analysis and

11  framework in *Infuturia Global Ltd v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137-38 (9th Cir.

12  2011), such that a fact inquiry is not appropriate at the removal stage.

13       Fundamentally, plaintiff's arguments in favor of remand "conflate[ ] the jurisdictional

14  and merits inquiry into a single step."  *Miller*, at *16.  But "the language of [the Convention]

15  contemplates that jurisdiction should be determinable solely from the notice of removal."  *Id*.

16  As such, and as in *Miller*, "plaintiff's arguments as to the validity and enforceability of the

17  arbitration agreements [and, here, the arbitral award] are premature.  They need not be

18  resolved in the determination of initial jurisdiction."  *Id*. at *16-*17.  Ms. Miller's particular

19  "reasons" were immaterial, as the standard was patently incorrect.

20       Defendants here "are not required to show that the arbitration agreements [or the

21  Arbitral Award] presented in these various documents are enforceable in order to remove an

22  action."  *Id*. at *13.  As *Miller* illustrates, Defendants must show only a colorable basis for

23  removal on the face of the Notice.  Defendants have done that.  As in *Miller*, Plaintiff's

24  Motion to Remand should be denied.

25

26

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 17
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

## MOTION TO ENFORCE PHILIPPINE ARBITRATION AWARD

**A.    The Foreign Arbitral Award Must Be Enforced and Plaintiff's Claims Must Be Dismissed Outright**

At its most basic, "[t]he Convention is a multi-lateral treaty that requires courts of the signatory nation states to give effect to private agreements to arbitrate and enforce arbitration awards made in other contracting states." *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116 (11th Cir. 2009).  The United States enforces the Convention through Chapter 2 of the Federal Arbitration Act, which incorporates the Convention's terms.  *Id.*  The Convention and the FAA's Chapter 2 "exclusively govern arbitration between a citizen of the United States and citizens of a foreign country."  *Costa v. Celebrity Cruises, Inc.*, 768 F.Supp.2d 1237, 1240 (S.D. Fla. 2011).

In order to implement the Convention, the FAA's Chapter 2 assigns jurisdiction to the district courts and provides two causes of action for parties seeking to enforce foreign arbitration agreements and awards: (1) an action to compel arbitration pursuant to a foreign arbitration agreement under 9 U.S.C. § 206; and, (2) an action to confirm a foreign arbitral award.  See, *Lindo v. NCL Bahamas, Ltd.*, 652 F.3d 1257 (11th Cir. 2011).  Defendants' Motion to Enforce the Foreign Arbitral Award is made pursuant to the latter.  In the alternative, Defendants move, below, under the former, to enforce the three overlapping arbitration agreements that Mr. Castro executed with Defendants.

A district court's "review of a foreign arbitration award is quite circumscribed." *Ministry of Defense of the Islamic Republic or Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992).  "As a matter of practice, an action to enforce an arbitration award is a summary proceeding and arbitration awards are routinely confirmed and enforced."  Lawrence S. Schaner & John R. Schleppenbach, Enforcement of Foreign Arbitral Awards and Court Judgments in the United States, 10 (Jenner and Block, 2010).  "[A] party to a foreign arbitration may apply to federal district court for an order confirming the award [and] the

district court has little discretion: 'the court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the Convention.'" 969 F.2d at 770 (emphasis in original), citing 9 U.S.C. § 207. "Because a general enforcement bias informed the Convention, [the enumerated grounds for refusal] should be construed narrowly." *Id.*

The facts surrounding the execution of Mr. Castro's release and settlement are discussed in great detail (with citation to declarations) above. They can be summarized thus, and demonstrate there are no grounds for refusal to enforce: Mr. Castro discussed a complete settlement of his claims with Ms. De Torres over the course of several months. When Mr. Castro visited Pandiphil's Philippines office to finalize that settlement, Ms. De Torres carefully translated the documents for Mr. Castro (and his girlfriend, Ms. Castillo) and explained, in both English and Tagalog (Mr. Castro's native language) the contents and ramifications of the settlement documents (Ms. De Torres signed a certificate of translation attesting to same). Mr. Castro, for his part, signed and initialed the settlement and release documents in numerous places attesting also that he had read and understood the documents. Pandiphil's Ms. Espana and Ms. Yabut then accompanied Mr. Castro and Ms. Castillo to Mr. Gregorio Biares' office at the National Conciliation and Mediation Board of the Philippines.

Mr. Biares similarly "explained to the above-named parties the legal implications of entering into a compromise agreement in the Filipino language." Mr. Biares also explained the remedies Mr. Castro was waiving under U.S. Maritime Law to Mr. Castro before he issued an Order confirming the settlement.

The finality and binding nature of the Order approving the compromise agreement is unambiguously embodied in the Philippine Labor Code and its supplemental guidelines. Ex. H, ¶¶ 10-13. A Maritime Voluntary Arbitrator is specifically vested with the authority to decide disputes based on a compromise agreement between the parties and an Order issued by a Maritime Voluntary Arbitrator is as good as a judgment rendered by a competent court.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 19
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

Ex. H, ¶¶ 14-17.  Mr. Herbert Tria, who was a Member of the Tripartite technical Working Group that drafted and deliberated on the Standard Terms and Conditions Governing the Employment Of Filipino Seafarers On-Board Ocean-Going Vessels and is familiar with the handling of seafarers' claims in the Philippines, including voluntary arbitration and arbitration before the National Labor Relations Commission, offers the following legal conclusion:

> "[T]he decision of a voluntary arbitrator based on a compromise settlement agreed upon by the parties, upon lapsing into finality and ripening into an executory one, is akin to a final judgment by a competent court which has the effect of res judicata and thus bars subsequent action involving the same parties, subject matter and cause of action. Any such subsequent action may be dismissed accordingly. ***Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, the decision of the voluntary arbitrator shall be recognized and enforced in a foreign court of a state which is a party to said Convention.***"

Ex. H, ¶¶ 28, 29.  Mr. Tria's conclusion comports with decisions from U.S. Courts.

**B.**     **"Unhappy With the Result" is Not Grounds for Refusal or Deferral of Recognition or Enforcement of the Arbitral Award**

In *Navarette v. Silversea Cruises, Ltd.*, 169 F.Supp.3d 1314 (S.D. Fla. 2015), the United States District Court for the Southern District of Florida took up the very issues presented here.[5]  Mr. Navarette, a Philippine citizen, was injured while working aboard defendant's vessel.  169 F.Supp.3d at 1316.  Pursuant to an arbitration clause in Mr. Navarette's employment contract, the parties arbitrated in the Philippines before an accredited Voluntary Maritime Arbitrator.  *Id.*  Unhappy with the result, Navarrete moved to vacate the arbitral award.[6]  But "unhappy with the result" is not a basis to refuse to enforce a

---

[5] The Southern District of Florida is a leader in this area as so many cruise ship companies and the armies of foreign workers they employ sail out of southern Florida.

[6] The court noted "[m]any courts, including this one, have found that the Convention does not authorize actions to vacate arbitration awards; rather, a court may only refuse to confirm an arbitral award." 169 F.Supp.3d at 1316, n.1, citing *Gonsalvez v. Celebrity Cruises, Inc.*, 935 F. Supp. 2d 1325, 1330 (S.D. Fla. 2013) (collecting cases), *aff'd*, 750 F.3d 1195 (11th Cir. 2013).

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 20
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

foreign award.  So, his employer countered with a "motion seeking recognition and enforcement of the Philippines Arbitration Award pursuant to the Convention." *Id.*

The court began by stating its jurisdictional authority to recognize awards falling under the Convention, the purpose of which is to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced . . ." 169 F.Supp.3d at 1316-17.  The court confirmed the limited nature of the relevant inquiry, saying:

> "When reviewing an arbitration award, ***confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations,*** other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm.  [C]ourts may vacate an arbitrator's decision only in very unusual circumstances ***[and] the court's review of an award is extraordinarily narrow***."

169 F.Supp.3d at 1317 (internal citations omitted and emphasis added).

Mr. Navarette advanced an argument identical to one advanced by Mr. Castro here – that the normal operation of the Convention must bend under the traditional "wards of admiralty" presumptions.  The *Navarette* court disagreed.

While recognizing "two competing public policies: (1) the strong public policy favoring arbitration, which 'applies with special force in the field of international commerce;' and (2) the public policy to protect seamen as 'wards of admiralty,'" the court highlighted that "these policies must be considered in light of background principles of international comity." 169 F.Supp.3d at 1318, citing *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1018 (5th Cir. 2015) ("analysis of a foreign arbitral award is colored by concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes . . . even assuming that a contrary result would be forthcoming in a domestic context.").  Given those

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 21
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

1  considerations, "unhappy with the result" did not form a basis for refusal to enforce.  The

2  court upheld the Philippine arbitral award and dismissed Mr. Navarette's claims outright.

3      The same result was reached by the United States Court of Appeals for the Fifth

4  Circuit in *Asignacion*, *supra*.  Mr. Asignacion, like Messrs. Navarette and Castro, was a

5  Philippine seaman injured while working aboard the defendant's vessel.  *Asignacion*, 783

6  F.3d at 1013.  Like Messrs. Navarette and Castro, Mr. Asignacion's claims were reduced to

7  an award by a Philippine Voluntary Maritime Arbitrator.  *Id*.  Like Mr. Castro, Mr.

8  Asignacion argued the award should be set aside because he was afforded inadequate

9  remedies and, like Messrs. Navarette and Castro, Mr. Asignacion complained he was

10  awarded an inadequate sum.

11      Mr. Asignacion had been awarded $1,870 for his injury despite the fact that he had

12  "sustained severe burns to 35% of his body, suffered problems with his body-heat control

13  mechanism, and experienced skin ulcerations and sexual dysfunction."  783 F.3d at 1014.

14  Evidence was presented that the Philippine Overseas Employment Administration

15  ("POEA")'s schedule used to allot the financial compensation owing to Philippine seamen

16  ascribed that amount.[7]  *Id*. at 1014.  The Philippine arbitrator had accepted the finding that

17  Asignacion had a "Grade 14" disability which entitled him to exactly $1,870, and no more.

18  *Id*.  Like Mr. Navarette, Mr. Asignacion was unhappy with his result.

19      Mr. Castro seems similarly unhappy.  He makes repeated reference to the inaccurate

20  settlement figure of $16,160 (as discussed above), calling it a "miserly" settlement, and

21  suggesting that "a contrary result would be forthcoming" in a United States forum.  As noted

22  above, the $16,160 figure repeated throughout Plaintiff's briefing ignores both the $3,000

23  and $5,000 advances that became part of Mr. Castro's $24,160 settlement.  That, however, is

24  ────────────────────

25  [7] Mr. Herbert Tria provides a comprehensive explanation of the POEA system and schedule
   in the attached Exhibit G.  Mr. Tria was part of the technical working group that drafted

26  those standards.  Ex. G, ¶ 3.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 22
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

of no consequence to this Court's analysis[8] (although it calls into question the veracity of Mr. Castro's account and recollections).  Whatever the figure, "simply because a foreign arbitral award provides for a smaller recovery than may have been available under United States maritime law does not necessarily mean the award violates public policy."  169 F.Supp.3d at 1317, citing *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1283 (11th Cir. 2011) (rejecting the argument that "less favorable treatment in a foreign forum under foreign law" amounted to a sufficient public policy defense under the Convention).  Mr. Castro was apprised of the remedies to which he might be entitled under U.S. Maritime Law "before signing any release."  Ex. 3 to the Boyajian Dec, at p.10.  But, under the Convention, "[a]pplying Philippine law to a Filipino seaman in Philippine arbitration, by itself, is not cause for setting aside the award." 783 F.3d at 1016.

The court admitted "[w]ere [Asignacion] to prevail in a suit under United States general maritime law, we have little doubt his recovery would be greater."  783 F.3d at 1017.  But the court also questioned the absurd outcome that would arise if "[t]he amount and type of recovery which a foreign seaman may receive from his foreign employer while sailing on a foreign ship should [ ] depend on the wholly fortuitous circumstance of the place of injury," especially in light of the Convention's overarching "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes."  *Id*. at 1017-18.  The arbitration award was therefore enforced and Mr. Asignacion's claims

---

[8] It is, however, worth noting that Mr. Tria, a Member of the Tripartite Technical Working Group that drafted and deliberated on the Standard Terms and Conditions Governing The Employment Of Filipino Seafarers On-Board Ocean-Going Vessels ("POEA") concludes "*the amount that was paid to Mr. Castro was more than double the amount that he is entitled to receive under the Schedule of Disability Allowance provided under Section 32 of the POEA SEC*. The injury suffered by the seafarer has a corresponding disability grading of Grade 10 which under the Schedule of Disability Allowances has an equivalent disability benefits amounting to US$10,075.00.  The assessment was described by the treating doctors as "complete immobility of a knee joint in full extension."  Tria Dec., ¶ 20 (emphasis added).

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND, MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC. Case No. 2:17-CV-00008-RSL - 23

PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

1  were dismissed.

2  Here, Mr. Castro advances the same series of arguments addressed in *Miller*,

3  *Navarette*, and *Asignacion*.  Yet each court retained jurisdiction and, in *Navarette* and

4  *Asignacion*, upheld the foreign arbitral awards.

5  Mr. Miller, like Mr. Castro, argued that (1) as a native Tagalog speaker, he was

6  unable to understand his English-language employment agreement; (2) his employment

7  agreement was entered into after he had commenced doing the vessel's work; (3) multiple

8  overlapping arbitration clauses created uncertainty and ambiguity; and, (4) that he was a

9  "ward of admiralty" and must be afforded heightened legal protections under U.S. Maritime

10  Law.  The court was unpersuaded, and refused to remand or conduct a deeper factual

11  analysis.

12  Messrs. Navarette and Asignacion, like Mr. Castro, argued the remedies and result

13  provided by his Philippine arbitration were inadequate, especially in light of the United

14  States public policy to protect seamen as "wards of admiralty."  Nonetheless, the courts

15  explained "confirmation under the Convention is a summary proceeding in nature" and

16  concluded "the strong public policy favoring arbitration, which applies with special force in

17  the field of international commerce" required enforcement of the Philippine arbitral awards

18  on defendants' motions.  This notwithstanding Messrs. Navarette and Asignacion's assertion

19  that "recovery would be greater" if they were to "prevail in a suit under United States general

20  maritime law."

21  The facts and arguments Mr. Castro presents are not novel – Mr. Castro is not the

22  first seaman to be unhappy with the result of his settlement, once the money's been spent.

23  But Mr. Castro's arguments have been repeatedly and routinely rejected by district courts,

24  eschewing remand and upholding Philippine arbitral awards in summary proceedings on

25  defendants' motions.  So too, Mr. Castro's award should be summarily enforced by this

26  Court and his claims dismissed.

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 24
PDX\124474\218360\DBO\20118519.1

## MOTION, IN THE ALTERNATIVE, TO ENFORCE FOREIGN ARBITRATION AGREEMENTS

**A.     The Three Overlapping Foreign Arbitration Agreements Should Be Enforced( if this Court is not Inclined to Enforce Plaintiff's Settlement and Arbitral Award)**

Mr. Castro agreed to resolve disputes arising out of his alleged injury through arbitration in American Samoa on three separate occasions, as evidenced by three separate documents (this before he asked Defendants to settle his claims in the Philippines):

1.  Mr. Castro's signed Employment Agreement, dated 12 July 2013, contains an arbitration clause in favor of American Samoa;

2.  Mr. Castro's signed Advance Payment Receipt, dated 15 January 2014, contains a further agreement to be bound by the arbitration clause in the Employment Agreement; and,

3.  Mr. Castro's Settlement, Release, and Arbitration Award, dated 28 February 2014, contain a third agreement to arbitrate in America Samoa (this one specifically "with respect to the validity and/or enforceability of this Release.")

This Court, not the state court, is the appropriate forum in which to enforce these overlapping provisions (as discussed in *Miller*, supra).  Remand is inappropriate, as the Convention tasks the district courts with the "extremely narrow" and "summary" review regarding the enforceability of these agreements.

A long line of cases mandate enforcement of these three overlapping agreements to arbitrate: *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 472 U.S. 614 (1985) (enforcing a foreign arbitration provision even though a litigant had raised U.S. statutory causes of action), *Vimar Seguros y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528 (1995) (enforcing foreign arbitration provision even though Japanese proceeding could limit a shipping carrier's liability below U.S. Maritime Law guarantees), *Lipcon v. Underwriters at Lloyd's of London*, 148 F.3d 1285 (11th Cir. 1998) (enforcing foreign arbitration provision

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 25
PDX\124474\218360\DBO\20118519.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711

even though foreign tribunal would afford the American plaintiffs fewer remedies than would be available under U.S. statutory law), *Bautista v. Star Cruises*, 369 F.3d 1289 (11th Cir. 2005) (enforcing foreign arbitration provision even though Jones Act seaman argued that Philippine tribunal would produce an unconscionable result).  This Court is compelled to enforce Mr. Castro's three signed arbitration clauses and direct his matter to arbitration in American Samoa, if this Court is not inclined to enforce Mr. Castro's foreign arbitral award and dismiss outright.

## CONCLUSION

In an effort to circumvent this airtight Arbitral Award, plaintiff cherry-picks facts (ignoring the inconvenient ones like Mr. Castro's two cash advances totaling $8,000 and understating Mr. Castro's recovery by fully 33%) to fit the same narrative that has failed in federal courts across the country.  But the documentary evidence in this case is unambiguous and points this Court towards one single result – summary enforcement of Mr. Castro's foreign arbitral award.  The compromise agreement upon which the arbitral award is based contains the following: five separate signatures by Michael Castro, a notarial seal and signature, a translator's certification, the signatures of three additional witnesses (including Mr. Castro's girlfriend), and a signed Rights of Seaman document explaining the U.S. Maritime remedies Mr. Castro was releasing.  Those documents were then explained, again, to Mr. Castro by an experienced and accredited Philippine Maritime Arbitrator who reduced Mr. Castro's settlement to an arbitral award.  The Convention therefore mandates that Mr. Castro be held to the $24,160 (not including the medical treatment, lost wages, and living expenses that Defendants also paid) deal he struck.

/ / /

/ / /

MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND,
MOTION TO ENFORCE FOREIGN ARBITRAL AWARD, ETC.
Case No. 2:17-CV-00008-RSL - 26
PDX\124474\218360\DBO\20118519.1

Defendants therefore ask this Court to strike or deny plaintiff's motion to remand and summarily enforce Mr. Castro's Award and dismiss each of Mr. Castro's claims.

Dated this 27th day of February, 2017.

SCHWABE, WILLIAMSON & WYATT, P.C.


By:    /s/ David R. Boyajian
       David R. Boyajian, WSBA #50195
       Email:  dboyajian@schwabe.com
       1420 5th Avenue, Suite 3400
       Seattle, WA  98101-4010
       Telephone:    206.622.1711
       Facsimile:    206.292.0460
       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury, under the laws of the State of Washington, that the following is true and correct:  That on the 27th day of February, 2017, I arranged for service of the foregoing *DEFENDANTS' MOTION TO STRIKE, OPPOSITION TO MOTION TO REMAND, MOTION TO ENFORCE FOREIGN ARBITRAL AWARD AND, IN THE ALTERNATIVE, MOTION TO ENFORCE FOREIGN ARBITRATION CLAUSES* to the parties to this action as follows:

| | |
|---|---|
| John Merriam, Esq., WSBA #12749<br>john@merriam-maritimelaw.com<br>assistant@merriam-maritimelaw.com<br>Law Office of John Merriam<br>The West Wall Building<br>Fishermen's Terminal<br>4005 20th Avenue West, Suite 110<br>Seattle, WA 98199<br>Telephone:      206.729.5252<br>Facsimile:      206.729.1012<br><br>*Co-Counsel for Plaintiff* | William L. Banning, Esq. *pro hac vice*<br>wbanning@banningllp.com<br>Rebecca Rojas, Esq., *pro hac vice*<br>rrojas@banningllp.com<br>legalassistant@banningllp.com<br>Banning LLP<br>16409 Via de Santa Fe<br>Rancho Santa Fe, CA  92067<br>Telephone:      858.756.0056<br>Facsimile:      858.756.0003<br><br>*Co-Counsel for Plaintiff* |

/s/ David R. Boyajian
David R. Boyajian, WSBA #50195

CERTIFICATE OF SERVICE - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
U.S. Bank Centre
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone 206-622-1711

PDX\124474\218360\DBO\20118519.1